# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **LINDA S. FARIE** | : | **Case No. 08cv1249** |
| **Plaintiff(s),** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **JELD-WEN, INC., et al.** | : | **MEMORANDUM & ORDER** |
| **Defendant(s).** | : | |

This matter arises on the Defendants' motion to dismiss (Doc. 8). Jeld-Wen, Inc. ("Jeld-Wen") and Shasta Administrative Services ("Shasta") (collectively, "the Defendants") filed the motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on June 27, 2008. The Plaintiff, Linda S. Farie ("Farie"), filed a response in opposition to the motion on July 28, 2008 (Doc. 9), and the Defendants filed a reply in support of the motion on August 14, 2008 (Doc. 10). Accordingly, the Defendants' motion to dismiss is now ripe for adjudication.

Also pending before the Court is the Defendants' motion for default judgment (Doc. 12), which seeks default judgment with respect to the Defendants' counterclaims (Doc. 11), and Farie's motion for leave to file a response to the Defendants' counterclaims (Doc. 14). The Defendants' motion for default judgment was filed on October 22, 2008. On October 23, 2008, Farie filed a response in opposition to default judgment (Doc. 15) and a motion for leave to file a response to the Defendants' counterclaims (Doc. 14).

For the reasons articulated in greater detail below, the Defendants' motion to dismiss is **GRANTED**, Farie's motion for leave to file a response to the Defendants' counterclaims is **GRANTED**, and the Defendants' motion for default judgment is **DENIED as moot**.

## I.    BACKGROUND

The Plaintiff, Linda S. Farie, is an individual who was injured in a car accident in 2005.  As a result of the injuries she sustained, she incurred approximately $15,000.00 of medical expenses.  Farie filed a personal injury lawsuit against the other individual(s) involved in the 2005 car accident.  In 2007, she settled her personal injury case for $30,000.00.

Defendant Shasta Administrative Services administers the Jeld-Wen Health Benefit Plan, an ERISA health plan, The Jeld-Wen Health Benefit Plan, ("the Plan") for Defendant Jeld-Wen.  The Plan allegedly paid $6,133.17 for treatment of the injuries Farie sustained in the 2005 car accident.[1]

In connection with the $30,000.00 settlement agreement, Farie's counsel contacted Shasta on October 10, 2007, to provide notice of the settlement and to request that Shasta agree to reduce the amount of any purported lien against the settlement.  Shasta did not object to the settlement, but refused to reduce the amount of the purported lien and, instead, demanded reimbursement for the full amount that the Plan allegedly had paid on Farie's behalf.  On the same day, the Defendant stated in correspondence to Farie's counsel that "[t]he plan language unambiguously requires participants to reimburse the Plan when a recovery is made from a third party responsible for the participant's injuries."  (Compl. ¶ 9; Doc. 1-2.)  In the same letter, Shasta stated that the "make-whole" rule is inapplicable in this case.  (*Id.*)

On May 20, 2008, Farie filed her Complaint asserting a single claim for declaratory judgment based on her assertion that, under the Employee Retirement Income Security Act ("ERISA"), she is not required to reimburse the Defendants for the alleged $6,133.17 in medical expenses paid on

---

[1]  The Defendants deny that the Plan paid $6133.17, but affirmatively state that the plan paid a total of $6,394.31, and that $4,977.66 remains unreimbursed.  (Doc. 11.)  For purposes of the motion to dismiss, the amount at issue is not material.

Farie's behalf by the Plan.  She also alleges that, if the Court finds that she must reimburse the Plan, then Jeld-Wen should be required to pay a proportionate share of her attorney's fees under the common-fund doctrine.

The Defendants' Rule 12(b)(6) motion to dismiss asserts that Farie's complaint does not state a claim upon which relief can be granted because the language of the Plan expressly preempts the "make-whole" and set-off rules of insurance law pertinent to this case.  Similarly, the Defendants argue that the language of the Plan precludes any recovery of Farie's attorneys' fees.

The Defendants' Answer and Counterclaims (Doc. 11) asserts a counterclaim pursuant to the Plan for reimbursement of the unreimbursed amount the Plan paid to Farie in connection with the 2005 car accident, plus interest and costs.  According to the counterclaim, the unreimbursed amount is $4,977.66.  In addition, Jeld-Wen asserts a counterclaim for reimbursement of all costs it has to pay to collect the amounts owed, including attorneys' fees.

## II.    **DISCUSSION**

The Court is now confronted with three motions: the Defendants' motion to dismiss (Doc. 8), the Defendants' motion for default judgment (Doc. 12), and Farie's motion for leave to file a response to the Defendants' counterclaims (Doc. 14).  Each will be addressed in turn.

### A.    **The Defendants' Rule 12(b)(6) Motion to Dismiss**

#### 1.    **Rule 12(b)(6) Standard**

The Court may dismiss a claim for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) is directed solely at the complaint itself.  *Roth Steel Products v. Sharon Steel Corp*., 705 F.2d 134, 155 (6th  Cir. 1983) (citing *Sims v. Mercy Hospital of Monore*, 451  F.2d 171, 173

(6th Cir. 1971)).  When evaluating a complaint in light of a motion to dismiss, the Court must accept all of the plaintiff's allegations as true and resolve every doubt in the plaintiff's favor.  *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir. 1990) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  A claim should be dismissed if it does not "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory . . . ."  *Id.* at 1969 (omitting citations and quotations, emphasis in original).

### 2.  Law & Analysis

The issues are whether the "make-whole" and/or "common fund" rules of insurance law apply in this case.  If they do not, then the Defendants' motion to dismiss should be granted.

### i.  The "Make-Whole" Rule

"The make-whole rule provides that an insurer cannot enforce its subrogation rights unless and until the insured [*i.e.*, Farie] has been made whole by any recovery, including any payments from the insurer."  *Copeland Oaks v. Haupt*, 209 F.3d 811, 814 (6th Cir. 2000).  The make-whole rule is the default rule in the Sixth Circuit.  *Id.* at 813.

### a.  Overcoming the Make-Whole Rule in the Sixth Circuit

The rule may be overcome, however, if the language of the ERISA plan expressly disavows it.  *Id.*  As stated by the Sixth Circuit in *Copeland Oaks*, "we now hold that in order for plan language to conclusively disavow the default rule, it must be specific and clear in establishing **both** a priority to the funds recovered **and** a right to any full or partial recovery."  *Id.* (emphasis in original).

-4-

The Defendants argue that the language of the Plan meets both of the Sixth Circuit's requirements for overcoming the make-whole rule.  In support of their argument, the Defendants begin by quoting the following portions of section 16 of the Plan:

> 16.2 Third-Party Responsibility. (c) The Plan is entitled to reimbursement of the full amount of the benefits it has paid from the proceeds of any recovery the covered Participant received from or on behalf of the third party. This is so regardless of whether: . . . (ii) The amount recovered is less than the amount of medical expenses or other losses incurred by the Participant.

> 16.3 Motor Vehicle Accidents. (d) The common fund doctrine and the "make-whole rule" do not apply to Section 16.3 motor vehicle accidents provisions of the Plan.

> 16.6 Reimbursement Obligations. (a) . . . . The Participant must reimburse the Plan even if: (i) The total amount of recovery is less than the amount of the loss suffered by the Participant . . . (b) Any amount which the Participant recovers must first go to repay the Plan. The amount of recovery to be reimbursed or otherwise paid to the program is not reduced by any expenses, such as attorneys' fees, incurred in connection with the recovery. Accordingly, the common fund doctrine is not applied. In addition, the "make-whole" rule of insurance law, which holds that an insurance company may not enforce a right of subrogation or third-party responsibility until the insured party has been fully compensated for any injuries, also does not apply.

(Doc. 8-3, Plan §§ 16.2, 16.3, 16.6.)  Each of these provisions clearly relates directly to the make-whole rule.

### 1.        The Plan Has Priority Over the Funds Recovered

The Defendants point to § 16.6 regarding the Sixth Circuit's first requirement, *i.e.*, that the Plan has priority over the funds recovered.  Section 16.6(b) is explicit on this point: "Any amount which the Participant recovers must first go to repay the Plan."  Although Farie argues generally in response that the Plan *summary* does not disavow the make-whole rule, she does not challenge the Defendants' argument regarding the Plan's priority over the funds under §16.6(b).[2]  In other cases

_____

[2] Farie's general argument regarding the summary of the Plan compared to the Plan itself is addressed below.

within the Sixth Circuit, moreover, the Court has found that the Plan has priority over recovered funds based on similar language. *See e.g.*, *Hiney Printing Co. v. Brantner*, 243 F.3d 956, 959 (6th Cir. 2001) (noting that the Plan expressly listed the Plan as the first recipient of recovered funds); *Findlay Indus., Inc. v. Bohanon*, No. 3:07cv1210, 2007 WL 2669191, *3 (N.D. Ohio Aug. 14, 2007) (finding Plan priority based on Plan language stating that participants "shall do nothing to prejudice the rights of the Plan to such reimbursement and recovery"); *Wausau Benefits v. Progressive Ins. Co.*, 270 F. Supp. 2d 980, 988 (S.D. Ohio 2003) (noting that the Plan stated: "Our right of subrogation shall be, in first priority . . . ); *cf. Comm. Ins. Co. v. Ohayon*, 73 F. Supp. 2d 862, 866 (N.D. Ohio 1999) (finding a Plan that did not address priority at all did not have priority). Accordingly, the Court finds that the first requirement for overcoming the default make-whole rule is satisfied under the circumstances of this case.

> **2.      The Plan Establishes a Right to Full or Partial Recovery of Monies from a Third Party**

The second part of the Sixth Circuit test for overcoming the default make-whole rule is also satisfied here.  Again, the Defendants cite specific language of the Plan in support of their argument, and Farie does not directly address the point.  The Defendants note that § 16.2(c) of the Plan expressly states that the Plan is entitled to reimbursement of funds recovered from a third party, regardless of whether the amount received represents a full or partial recovery.  *See Copeland Oaks*, 209 F.3d at 813.  Section 16.2(c) states:

> The Plan is entitled to reimbursement of the full amount of the benefits it has paid from the proceeds of any recovery the covered Participant received from or on behalf of the third party. This is so regardless of whether: . . . (ii) The amount recovered is less than the amount of medical expenses or other losses incurred by the Participant.

(Doc. 8-3, Plan § 16.2(c).)  Section 16.6 similarly states that participants such as Farie must

-6-

"reimburse the Plan even if . . . [t]he total amount of recovery is less than the amount of the loss suffered by the Participant." (*Id*. § 16.6(a)(i).)  Courts within the Sixth Circuit have held that similar language in an ERISA plan satisfies this requirement.  *See, e.g., Wausau Benefits*, 270 F. Supp. 2d at 988.  Accordingly, the second prong of the Sixth Circuit test for overcoming the make-whole rule is satisfied.

### b.      The Plan Expressly Disavows the Make-Whole Rule

In addition to satisfying the two-prong Sixth Circuit test for overcoming the make-whole rule, the Plan expressly states that the make-whole rule is not applicable.  (Doc. 1-3, Plan § 16.3(d) ("the common fund doctrine and 'make-whole rule' do not apply to Section 16.3 motor vehicle accidents provisions of the Plan."); Doc. 1-3 § 16.6(b) ("the "make-whole" rule of insurance law, which holds that an insurance company may not enforce a right of subrogation or third-party responsibility until the insured party has been fully compensated for any injuries, also does not apply.").)  Ignoring this direct disclaimer in the language of the Plan itself would be inconsistent with the ERISA goal of enforcing plans as they are written.  *See Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997).

Accordingly, the make-whole rule is clearly inapplicable to Farie's settlement proceeds and the Defendants' motion to dismiss is well-taken on that issue.

### ii.      The Common Fund Doctrine

Likewise, the common fund doctrine does not apply in this case.  Like the make-whole rule, the Sixth Circuit recognizes that the language of an ERISA plan may disclaim the common fund doctrine.  *See Health Cost Controls*, 139 F.3d at 1072; *Wausau Benefits*, 270 F. Supp. 2d 980.  Here, § 16.6(b) of the Plan specifically states that the common fund doctrine does not apply:

> Any amount which the Participant recovers must first go to repay the Plan. The amount of recovery to be reimbursed or otherwise paid to the program is not reduced by any expenses, such as attorneys' fees, incurred in connection with the recovery. **Accordingly, the common fund doctrine is not applied.**

(Doc. 8-3, § 16.6(b) (emphasis added).)  Simply put, the Plan is not required to pay Farie's attorney's fees, and the Defendants' motion to dismiss is well-taken with respect to the common fund doctrine as well.

### iii.    Farie's Defense: The Plan Summary Description vs. The Plan

In response to the Defendants' arguments in their motion to dismiss, Farie argues that, unlike the Plan itself, the Summary Plan Description ("Summary") is silent with respect to the make-whole rule and common fund doctrine.  (Doc. 9.)  Farie argues that, under Sixth Circuit law, when the summary of an ERISA plan conflicts with the plan itself, the summary controls.  (*Id.* at 7 (citing *Edwards v. State Farm Mut. Auto Ins. Co.*, 851 F.2d 134, 136 (6th Cir. 1988).)  The Defendants do not contest the rule as stated in *Edwards*, but note that the rule is inapplicable here because, in this case, the Summary is <u>not</u> in conflict or in any way inconsistent with the Plan, but is merely silent on the issues at bar.  (Doc. 10.)

The Defendants are correct: the Summary does not conflict with the Plan, and the Sixth Circuit has expressly stated that "the principle announced in *Edwards* does not apply to silence." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 401 (6th Cir. 1998).  The Sixth Circuit recently confirmed this principle in noting that there is no authority for the notion that "a plan summary which is merely ambiguous trumps unambiguous plan language."  *Zirnhelt v. Michigan*, 526 F.3d 282, 287-88 (6th Cir. 2008).  Common sense dictates this result: by definition, a summary cannot include all of the details of the Plan.  Although this point is self-evident, the Summary itself explicitly states that, "[f]or practical reasons," the Summary is not exhaustive and participants should

-8-

consult the Plan itself and contact the Plan Administrator with questions.  (Doc. 1-3, Summary Plan at 1.)

Because the Plan specifically and, under Sixth Circuit law, effectively, disclaims the make-whole rule and common fund doctrine, and the Summary is, at best, ambiguous and does not conflict with the Plan on these points, Farie's arguments are inapposite.

Accordingly, the Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 8) is **GRANTED**.

**B.     THE DEFENDANTS' COUNTERCLAIMS AND RELATED MOTIONS**

Although granting the Defendants' motion to dismiss resolves Farie's claims, the Defendants' counterclaims remain pending.  The remaining motions – the Defendants' motion for default judgment (Doc. 12) and Farie's motion for leave to file a response to the Defendants' counterclaims (Doc. 14) relate to the counterclaims.

**1.     Procedural History of the Defendants' Counterclaims**

On September 4, 2008, the Defendants filed their answer, and asserted counterclaims against Farie for reimbursement in the amount of $4977.66 pursuant to the Plan, and costs incurred in collecting the amounts owed, including attorneys' fees.  (Doc. 11.)  On October 22, 2008, the Defendants filed a motion for default judgment pursuant to Rule 55(a) of the Federal Rules of Civil Procedure on the grounds that Farie had failed to timely plead or otherwise defend against the counterclaims.  (Doc. 12.)  In their motion for default judgment, the Defendants assert that, based on Farie's failure to file a timely response, they are entitled to judgment on their counterclaims in the amount of $4977.66 in unreimbursed medical fees plus $32,519.22 in costs and attorneys' fees incurred to collect the unreimbursed amount.

-9-

On October 23, 2008, Farie filed a motion for leave to respond to the Defendants' counterclaims (Doc. 14) and a response in opposition to the Defendants' motion for default judgment (Doc. 15).  The grounds for Farie's motion for leave is that the electronic notice of the filing of the Defendants' Answer and Counterclaim was captioned as an "Answer," but did not mention a counterclaim.  Therefore, Farie's counsel asserts that he was not aware of his obligation to plead or otherwise respond to the counterclaims until the Defendants filed their motion for default judgment.

### 2.    Analysis

The Court finds that Farie has shown good cause for her failure to file an answer or otherwise respond to the Defendants' counterclaims. Although the Court notes that Farie's excuse indicates that Farie's counsel took a rather cavalier approach to monitoring the docket in this case, several considerations militate in favor of allowing Farie to respond to the Defendants' counterclaims. First, in light of the fact that default has not been entered in favor of the Defendants granting Farie's motion for leave to file a response will not conflict with any of the Court's prior Orders.  Second, the amount of the counterclaim (*i.e.*, $32,519.22)  is actually more than five times the amount requested in Farie's complaint (*i.e.*, $6,133.17), and exceeds the total value of the settlement (*i.e.*, $30,000.00).  The requested relief, moreover, is not simply a matter of computation, but requires the Court to evaluate the propriety of the amount of attorneys' fees and costs requested.  Thus, Farie is facing a relatively significant monetary loss and the Court would require briefs and/or a hearing to determine damages following the entry of default judgment anyway.  Accordingly, fairness and judicial efficiency compel the Court to **<u>GRANT</u>** Farie's motion for leave to respond to the Defendants' counterclaims (Doc. 14).  **Farie shall have eleven (11) days from the date of this Order to plead or otherwise respond to the Defendants' counterclaims.**

As a result of the Court's ruling with respect to Farie's motion for leave to respond, the Defendants' motion for default judgment is **DENIED** as **moot**.

III.     **CONCLUSION**

For the foregoing reasons, the Defendants' motion to dismiss (Doc. 8) is **GRANTED**, the Plaintiff's motion for leave to respond to the Defendants' counterclaims (Doc. 14) is **GRANTED**, and the Defendants' motion for default judgment (Doc. 12) is **DENIED** as moot.  Farie shall have eleven (11) days from the date of this order to plead or otherwise respond to the Defendants' counterclaims.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: October 31, 2008**