# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **LINDA S. FARIE** | : | **Case No. 08cv1249** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **JELD-WEN, INC., et al.** | : | **MEMORANDUM & ORDER** |
| **Defendants.** | : | |

This matter arises on the Defendants' Motion for Summary Judgment ("MSJ") (Doc. 17). Jeld-Wen, Inc. ("Jeld-Wen") and Shasta Administrative Services ("Shasta") (collectively, "the Defendants") filed the MSJ pursuant to Rule 56 of the Federal Rules of Civil Procedure on May 14, 2009. The Plaintiff, Linda S. Farie ("Farie"), filed a combined response in opposition to the Defendants' MSJ and Cross-motion for Summary Judgment ("Cross-MSJ") on June 15, 2009 (Doc. 18); the Defendants filed a combined reply in support of their MSJ and response in opposition to Farie's Cross-MSJ on June 29, 2009 (Doc. 19); and Farie filed a reply in support of her Cross-MSJ on July 10, 2009. Accordingly, the Defendants' MSJ and Farie's Cross-MSJ are now ripe for adjudication. In addition, Farie filed a Motion for Partial Reconsideration of the Memorandum and Order of October 31, 2008 ("Motion for Reconsideration, Doc. 21). For the reasons articulated in greater detail below, each of the parties' motions for summary judgment is **GRANTED**, **in part**, and Farie's Motion for Reconsideration is **DENIED, in part**.

I.      **BACKGROUND**

    A.      **UNDISPUTED FACTS**

       The parties have filed cross-motions for summary judgment, and the facts of this case are not in dispute.  Unless otherwise noted, the following facts are undisputed:

       The Plaintiff, Linda S. Farie, was injured in a car accident in 2005.  As a result of the injuries she sustained, she incurred approximately $15,000.00 of medical expenses.  Farie filed a personal injury lawsuit to recover for the injuries she sustained, and settled the case in 2007 for $30,000.00.

       Defendant Shasta Administrative Services administers the Jeld-Wen Master Welfare Benefit Plan, an ERISA health plan ("the Plan"), for Defendant Jeld-Wen.  The Plan allegedly paid approximately $6,000 for treatment of the injuries Farie sustained in the 2005 car accident.  Of that amount, Farie has not reimbursed the Plan $4,977.66.

       Soon after Farie agreed to settle the personal injury case for $30,000.00, Farie's counsel telephoned Shasta on October 10, 2007 to provide notice of the settlement and to request that the Defendants agree to reduce the amount of any purported lien against the settlement.  (Aff. of Att'y Todd O. Rosenberg ("Rosenberg Aff.") ¶ 11, Doc. 18-1; Ltr. from Sherri Young to Att'y Rosenberg dated 10/10/07 ("October 10 Letter"), Doc. 1-1.)  Specifically, Farie's counsel spoke to Shasta Subrogation Specialist Sherri Young ("Young").  (*Id.*)  During their conversation, Young informed Farie's counsel that Shasta did not object to the settlement, but refused to reduce the amount of the purported lien.  (Rosenberg Aff. ¶ 12.)  Instead, Shasta demanded reimbursement for the full amount that the Plan had paid on Farie's behalf, regardless of any amount Farie had spent on attorneys fees and costs in the underlying personal injury lawsuit, based on certain language in the Plan.  (*Id.*)  In response to this representation, Farie's counsel then asked to be provided a copy of the Plan so that

he could review the pertinent language.

On the same day, October 10, 2007, Young sent a letter to Farie's counsel stating, *inter alia*, that "[t]he plan language unambiguously requires participants to reimburse the Plan when a recovery is made from a third party responsible for the participant's injuries." (Compl. ¶ 9; October 10 Letter.) Young also stated that the "make-whole" rule is inapplicable in this case because it is expressly disclaimed by the Plan. (*Id.*)[1] Young accurately quoted the Plan as follows:

> The Plan states that "[a]ny amount which you or your dependents recover must first go to repay the 'Plan', and the 'make-whole' rule of insurance law, which holds tha[t] an insurance company may not enforce a right of subrogation or third-party responsibility until the insured party has been fully compensated for any injuries, also does not apply."

(Oct. 10 Ltr.)

Although Young accurately quoted the Plan itself in her October 10 Letter, she did not attach the Master Plan Document, i.e., the Plan itself, to the letter. Instead, she attached the Summary Plan Description, which does <u>not</u> contain the language she quoted, and is silent both with respect to whether the Plan has priority over settlement funds recovered and with respect to the make-whole rule. (Summary Plan Description, Doc. 1-2.) Farie's counsel noted this discrepancy in a letter dated January 22, 2008 responding to Young's October 10 Letter. (Ltr. from Att'y Rosenberg to Sherri Young dated 1/22/08 ("January 22 Letter"), Doc. 18-2.) Specifically, Farie's counsel writes:

> In [the October 10 Letter], you claim that the Plan states that "[a]ny amount which you or your dependents recover must first go to repay the 'Plan', and the 'make-whole' rule of insurance law, which holds tha[t] an insurance company may not enforce a right of subrogation or third-party responsibility until the insured party has been fully compensated for any injuries, also does not apply." **I do not, however, find that language anywhere in the applicable plan documents.**

---

[1]  Young also cited numerous federal cases in her letter for the proposition that federal courts "allow[ ] an ERISA Plan to expressly negate the [make whole] doctrine." (October 10 Letter.)

(January 22 Letter (emphasis added).)  Farie's counsel goes on to explain that, based on cited legal

authority, "the applicable plan documents," i.e., the Summary Plan Description he received from

Young, do not give the Plan priority over settlement funds recovered and do not effectively disclaim

the make-whole rule.  (*Id.*)  Accordingly, Farie's counsel concludes the January 22 Letter as follows:

> Based on the foregoing authorities, we are unable to honor your demand for
> reimbursement, as the Plan language fails to reject the "make-whole rule" of
> insurance law.  Please contact me once you have had an opportunity to review this
> correspondence so that we may discuss this matter further and work toward a
> mutually agreeable resolution.  In the meantime, if you have any questions, you may
> reach me at [contact information provided].

(*Id.*)[2]

Six days later, on January 30, 2008, Sherri Young responded to Farie's counsel's January 22

Letter with an email which provides as follows:

> I have forwarded your most recent letter to our corporate legal department at Jeld-
> Wen.  Unfortunately it is now out of my hands as you and I were unable to reach a
> conclusion on the Plan language.  Jeld-Wen will most likely retain Counsel and you
> may hear from them directly, or if I hear something I will certainly be in touch with
> you.

(Email from Sherri Young to Att'y Rosenberg dated 1/30/08 ("January 30 Email"), Doc. 18-3.)

Farie's counsel apparently did not hear from counsel for the Defendants regarding this matter after

the January 30 Email, and filed the Complaint in this case on May 20, 2008.  (Compl., Doc. 1.)

---

[2]  Although, for the reasons explained below, it is not ultimately a material issue, the
parties dispute whether Farie ever made a written request for the Master Plan Document.  It is
undisputed that Farie's counsel orally requested a copy of the Plan itself during his October 10,
2008 telephone conversation with Young.  Likewise, it is undisputed that the first time Farie and
her counsel actually saw a copy of the Master Plan Document, i.e., the Plan itself, was when the
Defendants filed it as an exhibit to their Motion to Dismiss the Complaint on June 27, 2008.
(Att'y Rosenberg Aff. ¶ 23; Master Plan Doc., Doc. 8-3.)  The parties dispute, however, whether
the January 22 Letter includes a written request for the Master Plan Document.

B.    **PROCEDURAL HISTORY**

1.    **Farie's Complaint (Doc. 1)**

Farie's Complaint asserts a single claim for declaratory judgment based on her assertion that, under the Employee Retirement Income Security Act ("ERISA"), she is not required to reimburse the Defendants for the medical expenses paid on her behalf by the Plan.

> Plaintiff requests a declaratory judgment that the Plan does not require her to reimburse the Plan for any payments made by it for Plaintiff's medical treatment related [to] injuries she sustained on January 29, 2005.

(Compl. ¶ 12.)  She also alleges that, if the Court finds that she must reimburse the Plan, then Jeld-Wen should be required to pay a proportionate share of her attorney's fees under the common-fund doctrine.

> In the event that this court should find that the Defendant is entitled to reimbursement of funds under the Plan, Plaintiff further requests a declaratory judgment that the Defendant is obligated to reimburse the Plaintiff for her attorney's fees and costs expended in the recovery of said funds in such an amount as equity may require pursuant to the "common funds" doctrine.

(*Id*. ¶ 13.)  In her prayer for relief, Farie demands:

> a) declaratory judgment as set forth in Paragraphs Twelve and Thirteen, *supra*; b) compensatory damages in an amount equal to the interest which would have accrued on those funds held in escrow pursuant [to] the controlling statutory interest rate; and c) her reasonable costs and attorney fees and costs of litigating against the Defendant as provided for in 29 U.S.C. 1132(g); and d) such other relief as equity may require[].

(*Id*. at 4.)

The allegations in Farie's Complaint, moreover, describe the discrepancy between the language Young quoted in the October 10 Letter and the Summary Plan Description Young attached to that letter. Farie bases her claim for declaratory judgment on the fact that the language Young quoted does not appear in the Summary Plan Description.  Further, the Complaint refers to the

Summary Plan Description as "the Plan," implicitly indicating that Farie erroneously assumes the Summary Plan Description is the Plan because it is the only document Young provided Farie's counsel in response to his request for a copy of the Plan during their telephone conversation on October 10, 2007.  The purpose of Farie's counsel's request, moreover, was to permit him to review the applicable language and determine Farie's legal position.

The Complaint also alleges that Farie's counsel requested a copy of the Master Plan Document pursuant to 29 U.S.C. § 1132(c)(1) during his October 10 telephone conversation with Young.

### 2.     The Defendants' Motion to Dismiss (Doc. 8)

Rather than filing an answer, the Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on June 27, 2008.  (Motion to Dismiss, Doc. 8.) The Defendants' Rule 12(b)(6) motion to dismiss asserted that Farie's Complaint does not state a claim upon which relief can be granted because the language of the Plan expressly preempts the "make-whole" and "common fund" rules of insurance law pertinent to this case.  Similarly, the Defendants argued that the language of the Plan precludes any recovery of Farie's attorneys' fees. Importantly, the Defendants attached the Master Plan Document to the Motion to Dismiss as an exhibit.  (Motion to Dismiss, Ex. A ("Master Plan Document".)

Farie opposed the Motion to Dismiss.  (Opp'n Br. to Motion to Dismiss, Doc. 9.)  Farie argued that, unlike the Plan itself, the Summary Plan Description is silent with respect to the make-whole rule and common fund doctrine.  (*Id.*)  She contended that, under Sixth Circuit law, when the summary of an ERISA plan conflicts with the plan itself, the summary controls.  (*Id.* at 7.)

The Court granted the Defendants' Motion to Dismiss in an Order dated October 31, 2008.

-6-

(Order of Oct. 31, 2008, Doc. 16.)  The Court found that the Plan effectively disclaimed the make-whole rule and common fund doctrine based on the following portions of section 16 of the Plan:

> 16.2 Third-Party Responsibility. (c) The Plan is entitled to reimbursement of the full amount of the benefits it has paid from the proceeds of any recovery the covered Participant received from or on behalf of the third party. This is so regardless of whether: . . . (ii) The amount recovered is less than the amount of medical expenses or other losses incurred by the Participant.

> 16.3 Motor Vehicle Accidents. (d) **The common fund doctrine and the "make-whole rule" do not apply to Section 16.3 motor vehicle accidents provisions of the Plan.**

> 16.6 Reimbursement Obligations. (a) . . . . The Participant must reimburse the Plan even if: (i) The total amount of recovery is less than the amount of the loss suffered by the Participant . . . (b) Any amount which the Participant recovers must first go to repay the Plan. The amount of recovery to be reimbursed or otherwise paid to the program is not reduced by any expenses, such as attorneys' fees, incurred in connection with the recovery. **Accordingly, the common fund doctrine is not applied. In addition, the "make-whole" rule of insurance law, which holds that an insurance company may not enforce a right of subrogation or third-party responsibility until the insured party has been fully compensated for any injuries, also does not apply.**

(Order of Oct. 31, 2008 at 4-8 (quoting Master Plan Document §§ 16.2, 16.3, 16.6 (emphasis added)).)  Accordingly, the Court granted the Defendants' Motion to Dismiss Farie's declaratory judgment action and held that the Plan requires her to reimburse the Defendants for the payments the Plan made for Farie's medical treatment in connection with injuries she sustained in the car accident that was the basis of the underlying lawsuit ($4,977.66).

### 3.    The Defendants' Answer & Counterclaims (Doc. 11)

While their Motion to Dismiss was still pending, on September 4, 2008 the Defendants filed an Answer and Counterclaims.  (Answer & Countercl., Doc. 11.)  The Defendants' Answer & Counterclaims asserts a counterclaim pursuant to the Plan for reimbursement of $4,977.66 that the Plan paid to Farie in connection with the 2005 car accident, plus interest and costs.  In addition, the

Defendants assert a counterclaim for reimbursement of all costs they have to pay to collect the amounts owed, including all costs and attorneys' fees incurred in connection with this lawsuit.

### 4.    The Defendants' Motion for Default Judgment (Doc. 12)

On October 22, 2008, approximately forty-eight days after they filed their Answer & Counterclaims, and while their Motion to Dismiss was still pending, the Defendants filed a Motion for Default Judgment pursuant to Rule 55(a) of the Federal Rules of Civil Procedure on the grounds that Farie had failed to timely plead or otherwise defend against the counterclaims.  (Motion for Default Judgment, Doc. 12.)  In their Motion for Default Judgment, the Defendants asserted that, based on Farie's failure to file a timely response, they were entitled to judgment on their counterclaims in the amount of $4,977.66 in unreimbursed medical fees plus ***$32,519.22*** in costs and attorneys' fees incurred to collect the unreimbursed amount.  In other words, the Defendants requested costs and attorneys fees is in excess of six times the amount of unreimbursed medical fees.

On October 23, 2008, Farie filed a Motion for Leave to Respond to the Defendants' Counterclaims (Doc. 14) and a Response in Opposition to the Defendants' Motion for Default Judgment (Doc. 15).  In her Motion for Leave to Respond, Farie explained that the electronic notice of the filing of the Defendants' Answer and Counterclaim was captioned as an "Answer," but did not mention a counterclaim.  Therefore, Farie's counsel asserted that he was not aware of his obligation to plead or otherwise respond to the counterclaims until the Defendants filed their Motion for Default Judgment.  Farie had, however, filed her Answer as an exhibit to the Motion for Leave to Respond, and specifically requested that it be deemed filed if and when the Court granted the Motion for Leave to Respond.

The Court resolved Farie's Motion for Leave to Respond and the Defendants' Motion for

-8-

Default Judgment along with the Motion to Dismiss in its Order of October 31, 2008.  The Court

granted Farie's Motion for Leave to Respond and denied the Defendants' Motion for Default

Judgment as moot, explaining as follows:

> Although the Court notes that Farie's counsel took a rather cavalier approach to
> monitoring the docket in this case, several considerations militate in favor of
> allowing Farie to respond to the Defendants' counterclaims.  First, in light of the fact
> that default has not been entered in favor of the Defendants granting Farie's motion
> for leave to file a response will not conflict with any of the Court's prior Orders.
> Second, the amount of the counterclaim (*i.e.*, $32,519.22) is actually more than five
> times the amount requested in Farie's complaint (*i.e.*, $6,133.17), and exceeds the
> total value of the settlement (*i.e.*, $30,000.00).  The requested relief, moreover, is not
> simply a matter of computation, but requires the Court to evaluate the propriety of
> the amount of attorneys' fees and costs requested.  Thus, Farie is facing a relatively
> significant monetary loss and the Court would require briefs and/or a hearing to
> determine damages following the entry of default judgment anyway.  Accordingly,
> fairness and judicial efficiency compel the Court to **GRANT** Farie's motion for leave
> to respond to the Defendants' counterclaims (Doc. 14).

(Order of Oct. 31, 2008 at 10.)  The Court then instructed Farie to file an answer or otherwise

respond within eleven days of October 31, 2008.  (*Id.*)

Farie, however, did not file an answer or otherwise respond within eleven days.  In fact, she

did not file anything until after the Defendants filed the MSJ now pending before the Court.  She

apparently believed that the Answer attached to her Motion for Leave to Respond was sufficient

given that the Court granted her Motion for Leave to Respond and that, in that motion, she had asked

the Court to deem the attached Answer to the Defendants counterclaims as filed.

### 5.    The Defendants' MSJ (Doc. 17) and Farie's Cross-MSJ (Doc. 18)

On May 14, 2009 the Defendants filed the MSJ now pending before the Court.  (MSJ, Doc.

17.)  In response, Farie filed an opposition brief combined with a Cross-Motion for Summary

Judgment.  (Cross-MSJ, Doc. 18.)  Each party then filed a reply brief such that both motions for

summary judgment are now ripe for adjudication.  In addition, each party has requested a hearing,

if necessary, to determine the amount of attorneys' fees that should be awarded.

### a.    The Defendants' MSJ (Doc. 17)

The Defendants argue that summary judgment is appropriate at this time for several reasons. First, with respect to their counterclaim for the $4,977.66 the Plan paid in medical fees in connection with Farie's 2005 car accident, they argue that the Court's Order of October 31, 2008 directly addressed and resolved this question in favor of the Defendants.  Second, with respect to their counterclaim for approximately $32,000 in attorneys fees and costs in connection with this lawsuit, the Defendants argue that the Plan expressly provides for such a recovery of costs and attorneys fees in section 16.8.  Section 16.8 of the Master Plan Document provides as follows:

> Collection Costs.  If the Plan has to take legal or other action to enforce the Plan's third-party responsibility and subrogation or to otherwise be reimbursed by a covered Participant pursuant to the foregoing provisions of this Article 15, the covered Participant will also have to reimburse the Plan for the costs it had to pay to collect the amount owed, including the Plan's attorneys' fees.

(Master Plan Document § 16.8.)  Lastly, the Defendants note that 29 U.S.C. § 1132(g) provides the Court with discretionary authority to award attorneys' fees and costs to either party to an ERISA action.[3]  (MSJ at 6.)

### b.    Farie's Response & Cross-MSJ (Doc. 18)

In response, Farie makes the over-arching argument that this lawsuit would have been unnecessary if the Defendants' had provided the Master Plan Document when her counsel requested it during the telephone call on October 10, 2007.  (Cross-MSJ at 2-4.)  Instead, she contends, the Defendants created confusion by quoting language from the Master Plan Document while providing

---

[3]  Specifically, 29 U.S.C. § 1132(g) states that "[i]n any action under this subchapter . . . by a participant . . . the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

only the Summary Plan Description to Farie and her counsel, and then failed to allay that inevitable confusion until they finally filed the Master Plan Document on June 27, 2008, as an exhibit to the Motion to Dismiss.  (*Id*.)  She states that she "would have assessed her legal status differently, had she ever been provided a copy of the correct language prior to suit."  (*Id*. at 4.)

Next, she argues that she is entitled to recover the penalty set forth at 29 U.S.C. § 1132(c)(1) in connection with the Defendants' failure to provide the Master Plan Document in response to her request for that information.  (*Id*. at 5.)  Under 29 U.S.C. § 1132(c)(1), when an ERISA Plan administrator fails to provide information upon request, the Court has the discretionary authority to award the participant up to $100 per day from the date of the failure, and/or any other relief that the court "deems proper."  Farie notes that she specifically pled the failure to provide the plan in her Complaint. (*Id*. at 6 (citing Compl. ¶ 8)), and it is undisputed that her counsel first requested a copy of the Master Plan Document orally during his telephone conversation with Sherri Young on October 10, 2007.  She argues that the January 22, 2008 Letter from her counsel to Sherri Young constitutes a second, this time <u>written</u>, request for the Master Plan Document.  Consequently, Farie argues, 261 days passed between the date of her first request for the Master Plan Document (October 10, 2007) and the provision of that document (June 27, 2008), and, pursuant to § 1132(c)(1), the Court could award her up to $26,100.  Farie argues that the § 1132(c)(1) penalty is designed to deter exactly the sort of conduct the Defendants displayed in this case – if they had provided the information necessary for her counsel to evaluate her legal position, this lawsuit would not have been necessary and this matter would not be occupying the Court and the parties' time and resources.  (*Id*. at 6.)

Farie also argues that it would be unjust for the Defendants to recovery attorneys' fees and costs under the circumstances of this case.  First, Farie, not the Defendants, chose to pursue an action

to recover money from the tortfeasor in the underlying personal injury case.  Had she not expended the effort and resources to do so, the Plan would not have recovered <u>any</u> of the money it paid in connection with Farie's injuries.  Accordingly, Farie contends that equity requires the Defendants to bear some of the cost of recovering the money by paying at least a portion of her attorneys' fees.

### c.       The Defendants' Opposition to Farie's Cross-MSJ & Reply in Support of their MSJ (Doc. 19)

Responding to Farie's Cross-MSJ, the Defendants assert a new argument and reiterate several points.  (Defts. Reply & Opp'n Br., Doc. 19.)  First, they note that Farie did not comply with the Court's Order of October 31, 2008 instructing her "plead or otherwise respond to" the Defendants' counterclaims within eleven days.  Accordingly, the Defendants argue that they are entitled to summary judgment because Farie is in default with respect to their counterclaims.  (*Id*. at 2.) Second, the Defendants argue that Farie should be barred from asserting a claim for the statutory penalty under 29 U.S.C. § 1132(c)(1) for three reasons: (1) she did not seek to recover the penalty in her complaint; (2) even if she has not waived the claim for the statutory penalty, it is barred by the fact that the Court dismissed Farie's claims in the Order of October 31, 2008; and (3) it fails on the merits because Farie never requested the Master Plan Document <u>in writing</u>, as required by the companion provision to § 1132(c)(1), 29 U.S.C. § 1024(b)(4).  (*Id*. at 3-4.)  Finally, the Defendants note that the equitable considerations regarding who bears the cost of recovery are not applicable in this case because the governing contract expressly addresses this issue. (*Id*. at 4.)

In support of their own MSJ, the Defendants reiterate the arguments in their initial brief.

### d.       Farie's Reply in Support of Her Cross-MSJ (Doc. 20)

Farie notes in her reply that she filed an answer to the Defendants' counterclaims as an exhibit to her Motion for Leave to Respond (Doc. 14-1), and specifically requested that the answer

be deemed filed if and when the Court granted her Motion for Leave to Respond.  The Court's Order of October 31, 2008 granted Farie's Motion for Leave to Respond.  She further notes that the Defendants have tacitly acknowledged that she is not in default because they (1) filed a Rule 56 motion for summary judgment rather than a Rule 55 motion for default judgment and (2) did not raise this issue in their initial brief in support of summary judgment.

With respect to the Defendants' argument that Farie did not assert a claim for the § 1132(c)(1) statutory penalty in her Complaint, Farie notes that the prayer for relief requests "such other relief as equity may require[ ]."  She argues that, because of the confusion regarding the difference between the Summary Plan Description and the Master Plan Document, she could not have known of the potential claim for statutory damages under § 1132(c)(1) until the Defendants provided the Master Plan Document.  Once again, she asserts that the Defendants essentially forced her to file this lawsuit to clarify her rights under the Plan because, in response to Farie's counsel's request, Young misidentified the language she quoted and did not provide her with the Master Plan Document.  In fact, she argues, under Ohio Rule of Professional Conduct 1.15(e), her counsel could not ethically distribute settlement proceeds to the Plan until it demonstrated an entitlement to the proceeds.  Based on the Summary Plan Description, her counsel could not verify the Plan's entitlement to the settlement proceeds because the Plan language addressing this issue was not included in the summary.

Farie further argues that the statutory penalty applies even if she did not make a written request for a copy of the Master Plan Document.  She asserts that 29 U.S.C. § 1024(b)(2) requires the Plan to provide her with necessary information, in this case, a complete copy of the specific language of the pertinent provisions of the Plan, and that failure to do so triggers the statutory penalty

-13-

at § 1132(c)(1).

Finally, Farie argues that she is entitled to a discretionary award of attorney's fees under 29 U.S.C. § 1132(g).  She cites *Foltice v. Guardsman Prods.*, 98 F.3d 933, 937-38 (6th Cir. 1996) for the Sixth Circuit test for attorneys' fees pursuant to § 1132(g).  In support of this request, she notes that the amount of attorneys' fees requested by the Defendants – $32,000 – is in excess of six times Farie's liability to the Plan.

### 6.      Farie's Motion for Partial Reconsideration (Doc. 21)

On July 10, 2009 Farie filed a Motion for Partial Reconsideration of the Memorandum and Order of October 31, 2008.  (Motion for Partial Reconsideration, Doc. 21.)  This motion requests, to the extent necessary, an Order clarifying that the Court's Order of October 31, 2008 did not (and could not) finally resolve Farie's right to seek the statutory penalty for failure to provide the Master Plan Document upon request pursuant to 29 U.S.C. § 1132(c), or Farie's right to seek an award of attorneys' fees pursuant to 29 U.S.C. § 1132(g).  Farie argues that these issues fall outside the scope of the Motion to Dismiss because they did not manifest until the Defendants filed the Master Plan Document as an exhibit to the Motion to Dismiss.

## II.      **DISCUSSION**

There are three motions pending before the Court: the Defendants' MSJ (Doc. 17), Farie's Cross-MSJ (Doc. 18), and Farie's Motion for Partial Reconsideration (Doc. 21).  The cross-motions for summary judgment will be addressed together, and Farie's Motion for Partial Reconsideration will be resolved in the course of doing so.

### A.      THE STANDARD FOR CROSS-MOTIONS FOR SUMMARY JUDGMENT

Each party has moved for summary judgment under Rule 56 of the Federal Rules of Civil

Procedure.  (Doc. 26.)  Under Rule 56(c), summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In reviewing summary judgment motions, this Court must view evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008).  A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  Thus, in most civil cases, the Court will decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."  *Anderson*, 398 U.S. at 252.

Upon filing a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the non-moving party's claim.  *Moldowan v. City of Warren*, 570 F.3d 698, 719 (6th Cir. 2009); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 & n.12 (6th Cir. 1989).  The moving party, however, is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the moving party relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curto v. Harper Woods*, 954 F.2d 1237, 1241 (6th Cir. 1992) (quoting *Ceolotex*, 477 U.S. at 322); *Ocean Innovations, Inc. v. Quarterberth, Inc.*,

No. 1:03-CV-0913, 2009 U.S. Dist. LEXIS 54108, at *8-9 (N.D. Ohio June 26, 2009) (citing *Ceolotex*, 477 U.S. at 322).

In response, if the moving party establishes the absence of a genuine issue of material fact, to defeat summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  In this regard, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment"; rather, "Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379-80 (6th Cir. 2007) (citation omitted).  Moreover, the non-moving party must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87; *see also Barr v. Lafon*, 538 F.3d 554, 574 (6th Cir. 2008).

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87; *see also Anderson*, 477 U.S. at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict – whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.") (emphasis in original) (internal quotations omitted).

**B.    DISCUSSION**

This Order resolves a number of issues presented by the cross-motions for summary judgment.  Specifically, the Court will address and resolve each of the following issues in turn:

(1)    whether the Defendants are entitled to reimbursement from Farie for the $ 4977.66 the Plan paid for Farie's medical expenses in connection with the 2005 car accident;

(2)    whether, under the Plan itself, the Defendants are entitled to an award of their reasonable attorneys' fees in connection with this lawsuit;

(3)    whether Farie is entitled to an award of her reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g);

(4)    whether Farie is entitled to the statutory penalty set forth at 29 U.S.C. § 1132(c)(1) due to the Defendants' alleged failure to provide the Master Plan Document in response to a request for it.

Although the parties briefs also raise several other issues (e.g., whether default judgment should be entered in favor of the Defendants with respect to their counterclaims), each of these issues can and will be resolved in the context of one of the four issues listed above.

**1.    Issue One: The Defendants Are Entitled to Reimbursement of $ 4977.66**

The first issue was resolved by the Court's Order of October 31, 2008 granting the Defendants' Motion to Dismiss Farie's claim for declaratory judgment with respect to her contractual obligation to reimburse the Plan for the full amount of medical expenses paid by the Plan.  The Court's Order is unambiguous in this respect: it discusses and rejects Farie's arguments that the "make-whole" and "common fund" rules of insurance law should apply and finds that the language of the Plan expressly requires Farie to reimburse the Plan in full, without regard to Farie's attorneys' fees and costs incurred in litigating the underlying personal injury lawsuit.  Nothing in Farie's cross-motion or briefing assails this conclusion.  Although her equitable arguments are logical and appealing, they were addressed and rejected in the Court's Order of October 31, 2008.  Simply put,

-17-

the contract controls and the Defendants prevail under its plain terms.  Accordingly, the Court hereby **GRANTS** the Defendants MSJ with respect to Farie's reimbursement obligation and **ORDERS** Farie to pay the Plan $ 4977.66 pursuant to the terms of the Plan.

>  **2.**      **Issue Two: The Defendants Are Entitled to an Award of their** <u>**Reasonable**</u> **Attorneys' Fees in connection with this Lawsuit**

The Defendants' counterclaims assert a contractual right to an award of their reasonable attorneys' fees pursuant to § 16.8 of the Plan.  Section 16.8 entitles the Plan to recover reasonable attorneys' fees when a participant such as Farie forces the Plan to file a successful collections action in order to obtain reimbursement.  Farie tacitly concedes that the Plan provides for an award of reasonable attorneys' fees in connection with this lawsuit, but argues that, as a matter of equity, no award is appropriate because the Defendants unreasonably created the circumstances that lead to the lawsuit, and, in the alternative, the requested award of approximately $32,000 is grossly excessive as opposed to "reasonable."

As an initial matter, the Court rejects the Defendants' argument that they are entitled to default judgment with respect to their counterclaims because Farie did not file a response within eleven days of the Court's Order of October 31, 2008.  Although it is true that the Court instructed Farie to plead or otherwise respond within eleven days, she had already filed her answer as an exhibit to her Motion for Leave to Respond, and asked that it be deemed filed if and when the Court granted that motion.  Consequently, Farie's failure to file simply indicates that she chose not to file any pleading or response other than her previously filed Answer.  At most, the extent of Farie's transgression is a failure to <u>re</u>-file the exhibit to her motion as a pleading.

Next, the Court finds that the unambiguous language of § 16.8 of the Master Plan Document entitles the Plan to an award of reasonable attorneys' fees under the circumstances of this case.

-18-

Again, the express terms of the contract (set forth above) are controlling and clearly establish an entitlement to this relief.

The Court further finds, however, that $32,000 (or any amount close to or exceeding that figure) does <u>not</u> represent a <u>reasonable</u> fee award. In determining the reasonable amount of attorneys' fees, the Court applies the familiar "lodestar" analysis. *See Building Serv. Local 47 Cleaning Contr. Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1400 (6th Cir. 1995).) In *Grandview Raceway*, the Sixth Circuit stated: "In applying the lodestar approach, '[t]he most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate.'" *Grandview Raceway*, 46 F.3d at 1400 (omitting citations). Then, the Court may adjust the lodestar figure based on the factors "enunciated by the Fifth Circuit in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir.1974), and adopted by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 432 . . . (1983)." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).

> These factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id*. In this case, the number of hours expended and the analysis of the applicable *Johnson* factors are particularly noteworthy.

First, $32,000 is in excess of six times the $4977.66 Farie is required to reimburse the Plan. Although the Court is well-aware of the fact that quality legal representation is costly, the evidence before the Court indicates that, even assuming for the sake of argument that the hourly rates were

-19-

reasonable, the Defendants' attorneys billed an excessive number of hours to this matter. Specifically, the affidavit attached to the Defendants' Motion for Default Judgment includes billing statements for the numerous attorneys who worked on the case for the Defendants.  (Affidavit of Timothy B. Pettorini ("Pettorini Aff."), Doc. 12-2.)  The Pettorini Affidavit and attached statements reveal that prior to filing their MSJ, the Defendants used nine attorneys from two law firms (one of which is an international firm with more than twenty offices and almost a thousand attorneys), who billed 112.90 hours to this matter at hourly rates as high as $425.00.  Further, the billing statements are characterized by duplication of effort and over-staffing, indicating little or no effort to tailor the approach to the scope and nature of this matter.  Second, Farie's equitable argument that it was the Defendants own conduct that gave rise to this litigation is compelling, particularly in light of the excessive amount requested.  The purpose of § 16.8 is to compensate the Plan when a participant forces litigation in connection with the Plan's subrogation rights.  As Farie argues, however, the undisputed facts indicate that she did not instigate litigation in an effort to circumvent her reimbursement obligation.  Instead, she filed this as a declaratory judgment action to resolve confusion created by the Defendants' own failure to provide her with the copy of the Master Plan Document.  Although she may be under contract to pay for costs "reasonably" expended in that action, the fact that she was merely taking the steps necessary to clarify rights that the Defendants had obscured militates in favor of minimizing her obligation to pay the Plan's attorneys' fees.  In other words, where the Defendants' themselves could have prevented the litigation in the first instance by providing the correct Plan documents to Farie's counsel when they were requested, or could have short-circuited the litigation by providing those documents immediately upon receipt of the complaint (rather than in the context of the Motion to Dismiss), virtually no expenditure of

-20-

attorney time can be deemed "reasonable" within the meaning of the Plan. Accordingly, the Court will reduce the amount of the award of attorneys' fees and costs, as discussed below.

### 3. Issue Three: Farie Is Entitled to an Award of Her Reasonable Attorneys' Fees Pursuant to 29 U.S.C. § 1132(g)

Section 1132(g)(1) provides: "In any action under this title . . . by a participant . . . the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." In her Complaint, Farie requests relief in the form of "her reasonable attorney fees and costs of litigating against the Defendant as provided for in 29 U.S.C. § 1132(g)[.]" Farie also argues in her briefing on summary judgment that she is entitled to recover under § 1132(g).

The Defendants argue that the Court's Order of October 31, 2008 dismissing Farie's claim for declaratory judgment regarding her reimbursement obligation also dismissed her residual claim for damages under § 1132(g).  This argument, however, ignores the procedural history of this case. At the time the Court granted the Defendants' Motion to Dismiss, their counterclaims were pending. In fact, the Court granted Farie's Motion for Leave to Respond to the counterclaims in the same Order.  Therefore, the Court and the parties necessarily understood that the Order granting the Defendants' Motion to Dismiss did not resolve all of the issues in this case, and Farie renewed her request for attorneys' fees pursuant to 29 U.S.C. § 1132(g) in her summary judgment briefing. Furthermore, the section of the Court's Order of October 31, 2008 addressing the Defendants' Motion to Dismiss only discusses the "make-whole" rule and "common fund" doctrine – it does not mention Farie's request for attorneys' fees pursuant to § 1132(g).  In short, Farie asserted a § 1132(g) claim at the outset of an ongoing litigation and raised it again at the summary judgment stage.  She is entitled to have it considered on the merits.  Accordingly, the Court rejects the argument that its previous Order dismissing Farie's declaratory judgment claim precludes her from requesting

attorneys' fees pursuant to § 1132(g).

Having found that Farie's request for fees pursuant to § 1132(g) is valid, the next issue is whether such an award is appropriate under the circumstances of this case. The Sixth Circuit applies the following five-factor test in determining whether an award of attorneys' fees pursuant to § 1132(g) is appropriate:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Shelby County Health Care Corp. v. Majestic Star Casino, LLC*, 581 F.3d 355, 376 (6th Cir. 2009) (citing *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642 (6th Cir. 2006) (per curium); *accord Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir.1985) (establishing the five-factor test)). The balance of these factors favors an award of attorneys' fees to Farie.

The first factor – culpability – favors Farie because the Defendants unreasonably created the circumstances that caused Farie to file this lawsuit by failing to provide her with the correct document in response to her request to see the Plan it so that she could verify the Defendants' assessment of her reimbursement obligation. But for Young's failure to attach the Master Plan Document in response to either the October 10, 2007 telephone conversation with Farie's counsel, or the January 22, 2008 letter, and then the Plan's failure to follow-up on the issue after Young referred it to the legal department, Farie may not have filed this lawsuit in the first place.

The second factor – the Plan's ability to pay – also favors Farie because there is no reason to believe the Plan is incapable of paying attorneys' fees in a relatively small case like this one.

The third factor – the deterrent effect of an award – favors Farie because awarding attorneys'

fees when an ERISA plan administrator fails to provide information to participants would encourage other plan administrators to diligently provide relevant, requested information to participants in a timely manner. *See Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 531 (6th Cir. 2008) (noting that the Sixth Circuit "has consistently interpreted the deterrence factor as requiring consideration of a fee award's deterrent effect *on other plan administrators*." (emphasis in original)).

The fourth factor – whether Farie intended to benefit other participants in addition to herself or resolve any significant legal questions regarding ERISA by virtue of her lawsuit – favors the Defendants. There is no indication that Farie was attempting to benefit anyone other than herself, and the legal question regarding ERISA in this case are discrete, well-settled, and straight-forward.[4]

The fifth factor – the relative merits of the parties positions – does not favor either party. Although the Defendants prevailed based on the unambiguous language of the Plan, Farie had a good faith basis to believe that the "make-whole" rule and "common fund" doctrine would apply based on the language of the Summary Plan Description, the only contractual language available to her at the time she filed the lawsuit because the Defendants did not clarify the discrepancy between the language Young quoted from the Plan in her initial letter to Farie's counsel and the language of the Summary Plan Description until their Motion to Dismiss.

Accordingly, the balance of the factors favors a discretionary award of attorneys' fees to Farie.

Under the particular circumstances of this case, however, the Court finds that the amount of the award of attorneys' fees to Farie pursuant to § 1132(g) should not be substantial given the Court's conclusion that the Plan ultimately dictated the very reimbursement Farie sought to avoid

---

[4] Again, the Court notes that the Defendants' request for $32,000 in attorneys' fees is particularly excessive in light of the nature of the legal issues in this case.

in this litigation.  After considering all relevant facts and circumstances, the Court concludes that the amount due Farie under § 1132(g) equals the amount of attorneys' fees Farie owes the Defendants pursuant to § 16.8 of the Plan.  In other words, each party is entitled to recover its reasonable attorneys' fees from the other, but under different fee-shifting authority.  Although the Court acknowledges that this is an unusual approach to awarding attorneys' fees, it is justified under the unique circumstances of this case, and is an appropriate result based on the lodestar analysis and application of the *Johnson* factors.

Farie cannot re-write the terms of the contract and has not advanced any persuasive arguments indicating that the Court can ignore the unambiguous terms of the contract.  It is undisputed that the award of attorneys' fees pursuant to § 16.8 of the Plan must be reasonable; likewise, it goes without saying that the Court must exercise its discretion reasonably in awarding fees to Farie pursuant to 29 U.S.C.§ 1132(g).  As discussed above, the Defendants billed an excessive number of hours given the nature and circumstances of this case, indicating that the lodestar figure should be much lower than the amount the Defendants requested.  Further, the *Johnson* factors encompass Farie's compelling equitable arguments in opposition to the Defendants' request for attorneys' fees pursuant to the Plan itself.  Both sides have been researching the same issues and briefing the same motions.  There is no indication that the burdens of representation have been substantially different for one side or the other.  Accordingly, in this case, the amount of attorneys' fees that is reasonable for one side is reasonable for the other, and the Court exercises its discretion under § 1132(g) to set the amount of attorneys' fees awarded to Farie's counsel at whatever amount would be reasonable for the Defendants to recover under § 16.8 of the Plan.[5]

_____

[5] The Court obviously recognizes that its ruling with respect to attorneys' fees will result in each party bearing its own costs and fees.  This will appropriately saddle the Defendants with

-24-

**4.      Issue Four: Farie Is Not Entitled to the Statutory Penalty Under 29 U.S.C. § 1132(c)**

Farie's argument that the statutory penalty for failure to provide plan documents upon request is designed to discourage precisely what happened in this case is compelling.  It is not necessary, however, to address the merits of Farie's claim because it is procedurally barred.  Specifically, Farie failed to assert a claim for the statutory penalty pursuant to 29 U.S.C. § 1132(c) when the Court expressly gave her the opportunity to do so in its Order of October 31, 2008.  In issuing that Order, the Court recognized that the discrepancy between the language of the Summary Plan Description and the Master Plan Document changed Farie's understanding of the nature and scope of her rights.  On the one hand, those rights are clearly defined in the Master Plan Document, and, thus, the Court was duty-bound to dismiss her declaratory judgment action seeking a remedy in direct conflict with the language of the Plan.  On the other hand, the Court also recognized that the discrepancy had only come to light when the Defendants filed their Motion to Dismiss and, consequently, Farie deserved an opportunity to respond to the counterclaims with the benefit of the governing contractual language at her disposal, as well as to assert rights and claims that she may not have known about when she filed her initial complaint.  Among those rights was a plausible claim for the statutory penalty under § 1132(c).  Accordingly, the Court granted Farie's Motion for Leave to Respond to the Defendants' counterclaims and specifically stated that "**Farie shall have eleven (11) days from the date of this Order to plead or otherwise respond to the Defendants' counterclaims.**" (Order of Oct. 31, 2008 at 10 (emphasis in original).)  This was Farie's opportunity to assert a claim for the statutory penalty.  She did not respond to the Court's Order, however.  In fact, she did not assert her § 1132(c) claim

---

the grossly excessive bill from their attorneys in connection with a case that could have been avoided from the outset.

Case: 1:08-cv-01249-KMO  Doc #: 23  Filed:  03/16/10  26 of 27.  PageID #: 356

until over six months later in her Cross-MSJ.[6]  Accordingly, even if Farie is arguably entitled to the statutory penalty under § 1132(c),[7] she has waived that claim by not asserting it in a timely manner as instructed by the Court.[8]

---

[6] Farie's Motion for Partial Reconsideration asks the Court to consider her §1132(c) claim because the Order of October 31, 2008 could not have resolved a claim that did not come to light until the Defendants filed the Master Plan Document.  For the reasons explained above, however, Farie failed to avail herself of the opportunity the Court provided to assert this claim within eleven days of October 31, 2008.  Accordingly, Farie's Motion for Partial Reconsideration (Doc. 21) is **DENIED**.

[7] The Court notes that, were it to address the merits of Farie's request for the statutory penalty, it could not grant summary judgment to either party on this claim because of the material issue of fact with respect to whether and when Farie's counsel made a written request for the Master Plan Document.  Although Farie argues that a written request is not a requirement, the statute she cites to support this argument – 29 U.S.C. § 1024(b)(2) – does not apply to the facts of this case.

[8] In her complaint, Farie asserted a claim for a discretionary award of attorneys' fees pursuant to 29 U.S.C. § 1132(g).  In contrast, Farie's complaint does not assert a claim for or entitlement to the statutory penalty under 29 U.S.C. § 1132(c).  Therefore, although, as Farie points out, she requested "such other relief as equity requires" in her complaint, in light of the Court's explicit instructions in the Order of October 31, 2008 to plead or otherwise respond to the Defendants counterclaims, the Court finds that it was incumbent upon Farie to assert her § 1132(c) claim within eleven days of that Order.  Had she done so, she could have filed an amended pleading asserting the § 1132(c) claim.

### III. **CONCLUSION**

For the foregoing reasons, the Defendants' Motion for Summary Judgment (Doc. 17) is

**GRANTED in the following limited respects**:

- The Defendants are entitled to reimbursement from Farie in the amount of $4977.66 pursuant to the express terms of the Plan; and

- The Defendants are entitled to an award of their reasonable attorneys' fees in connection with this litigation pursuant to the express terms of the Plan, the amount of which shall be equal to Farie's reasonable attorneys' fees in connection with this litigation.

Further, Farie's Motion for Partial Reconsideration (Doc. 21) is **DENIED in part and GRANTED, in part**:

- Farie is not entitled to the statutory penalty under 29 U.S.C. § 1132(c), but this Order confirms that the Court's Order of October 31, 2008 did not bar Farie's request for attorneys' fees pursuant to 29 U.S.C. § 1132(g).

Finally, Farie's Cross-Motion for Summary Judgment (Doc. 18) is **GRANTED in the following limited respect**:

- Farie is entitled to an award of her reasonable attorneys' fees in connection with this lawsuit pursuant to the Court's discretionary authority to award such fees under 29 U.S.C. § 1132(g), the amount of which shall be equal to the amount of the Defendants' reasonable attorneys' fees.

Accordingly, Farie is hereby **ORDERED** to pay the Plan $ 4977.66, pursuant to the terms of the Plan.


**IT IS SO ORDERED**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: March 16, 2010**

-27-